Good morning. Good morning, Your Honors. May it please the Court, Ryan Wu on behalf of Appellant Huu Nguyen. I'd like to reserve three minutes for rebuttal. Okay. This Court's decision in Pulaski and Middleman reaffirmed Judge Schroeder's opinion in the Yokoyama that damages calculations alone cannot defeat class certification. Like other circuits, the circuit in Pulaski did not read the U.S. Supreme Court's Comcast decision to mean that Rule 23b-3 requires a class-wide damages model. Rather, under Comcast, as long as the proposed damages calculations can be traceable to the theory of liability and a reasonable basis for the calculations can be provided, then Rule 23b-3 is satisfied as to damages. This was reinforced by the en banc court's Hyundai and Kia fuel economy litigation decision that was issued last week. That decision reaffirmed Pulaski's language and quoted the Rule 23 Advisory Committee notes saying that consumer fraud claims are particularly amenable to class treatment, even if class members have differences in damages. Did the district court misapply Pulaski, and if so, how? Yes. Because in the first instance, the district court looked at post-purchase events. What Pulaski instructed is that the district court in consumer fraud cases involving lack of disclosure needs to look at the time of purchase. So in Pulaski, the district court there erred by considering post-sale events involving — in that case, the claim was that the ads sold by Google to advertisers sometimes were posted on error websites or websites that have no content. And the district court there said, well, they're getting some value out of that. So in your damages model, it didn't take into account the fact that some advertisers are getting some value out of posting ads in these error pages because of maybe SEO computations and so forth. So in the Pulaski appellate decision, the court said, no, you can't look at post-event occurrences. You have to look at what happened at the time of sale. This is because — So in this case, your position, I gather, is that looking at the lot, looking at the whole Nissan inventory, every one of the — I guess it's a break that we're talking about. Every one of them is potentially defective. Whether it actually becomes defective is another thing. But it was improper design. Everybody is affected by that ab initio. Is that right? What we're actually saying is that there is an actual design defect that's been installed in — It's the CSC. In all of them. In all of them. And therefore, the damages should be calculated based upon that defective design, regardless of what happens after it drives off the lot, then when the car drives off. Yes. Because the point there is, the claim here is that they didn't disclose the information. So if you look at Comcast, Comcast says when you analyze damages, you assume that the plaintiffs prevailed on their theory of liability at trial. The question is whether the damages actually flowed from the theory of liability. So here, our theory of liability is that Nissan has an alleged defect involving the CSC that creates this clutch problem, that they knew about this defect, that it's a safety issue, and they failed to disclose it. So if you're a consumer, at the point of sale, you've received this car. Let's say you bought it for $30,000. You didn't know that it had this known defect. Now, if we're right, as the analysis holds, that we have to look at our case as if we prevailed on our theory of liability, then Nissan would have had to disclose this information. So if Nissan disclosed the information saying, reasonable consumer, which is the standard, this car is listed at $30,000. We have this alleged defect involving the clutch. You can fix it for $700. That's not included in the price of the vehicle, but you can fix this defect for $700, and you wouldn't have this clutch problem that could create a safety concern. What would the reasonable consumer do? The reasonable consumer would negotiate a discount for $700. That's the model that we have, the difference between what the consumer expected to receive and what the consumer actually received, if the consumer had all of the information available to them. So the district court erred by not analyzing our theory of liability, improperly delving into the merits of the case, as in the Pulaski District Court, and coming up with an analysis of our model that is actually not what we say it is. Because, you know, if you look at Stephen Boyle's declaration, he says very specifically, our model is a benefit-of-the-bargain model that takes into account the cost of repair in order to have the good conform to what the buyer's expectation would be. So instead, the district court used in a posit cases involving juice or clothing and called it a full refund model. This isn't a full refund model. We didn't ask for a refund of the vehicle. That would be a full refund model. In cases involving full refund models, you're saying you have to disgorge the entire amount that was purchased. The plaintiff here and class members are purchasing a vehicle. They're not purchasing some clutch component. What we're saying is they're entitled to make sure that the car conforms to their expectations, which is a vehicle free of known defects. So what you're saying basically is the vehicles have a diminished value because of the clutch. Yes. And all vehicles have that same diminished value because you don't know how long that clutch is going to last, if it's going to last at all, and if it's going to go out, when it's going to go out. Yes, exactly. And so a consumer can't play Russian roulette with their purchases. Okay, the juice and the dress cases are different, I take it, because the consumer got some benefit from the juice. They drank the juice, enjoyed the juice, even though it didn't get all the vitamin C that they thought they were getting. Here there's no benefit from the defective clutch at all? There is. You get a benefit for the car. Yeah, the use is in the car. So I think the apples and oranges comparison is that when you buy a juice, you're buying the juice. You're not buying some component of the juice, right? Here we're buying a car. What we're saying is the car should be free of known defects, and the clutch problem is what we're saying is what Nissan should have done was provided an amount to repair the car so that it conforms to what the consumer's expectation would be. Now, if the juice had an additive that got people sick or something like that, then they wouldn't have gotten any benefit out of the juice. But that's not what those juice cases hold. And I think one of the key errors that the district court made was sort of looking at the issue as if the consumer was trying to buy a cylinder part. That's not what we're saying. What we're saying is the consumer has a right to have a car free from known defects. And again, we have to sort of assume in analyzing damages, we have to assume that we've prevailed. We've established that the car has defects across the class. Well, I'm trying to make your argument a little different way so that I can understand it a little better. With respect to the juice, there was benefit from the juice, depending on the individual. With respect to the defective clutch, there's no benefit at all from the defective clutch. You may have driven the car, but that's irrelevant to whether or not you got any value from the defective clutch. You didn't. Is that a way for it? That's correct. Certainly, even if it didn't manifest for 25,000 miles, as is the case with our client, the expectation is the clutch should last longer than that. You're not supposed to have a situation where if Nissan knew that this was a problem, that we should have taken our chances with a clutch that may or may not fail, depending on luck or the grace of God. So, you know, that's the expectation. The expectation of the consumer is that a clutch will last, what, 100,000 miles or what? You know, 60 to 100,000 miles, something at least, you know, the span of the powertrain warranty at a minimum. So, you know, and that didn't happen here with respect to our plaintiff. And, you know, in the briefing, there's a lot of talk about manifestation of symptoms, but that's not a consideration for class certification. This Court's decision in Wollin v. Jaguar made that very clear. And, in fact, in the Baker v. Microsoft decision, that was overturned on appeal by the Supreme Court on another issue. But 2% failure rate is not an impediment to class certification in that case. Want to save some time? I think you said you wanted to do that. Yes, I'll reserve my time. Okay. Well, let's hear from Nissan. Good morning, and may it please the Court. Good morning. Alan Lazarus, drinker, biddle, and wreath for Defendant Nissan North America. The key to this case, Your Honors, is what Judge Koh actually did and the considerable difference between her order and how it's been framed on appeal and plaintiff's claims of error. Plaintiff incorrectly claims that Judge Koh, number one, rejected cost of repair as a valid remedy for breach of warranty, and, number two, improperly shifted the focus in measuring benefit of the bargain from the time of purchase to the purchaser's post-sale experience. But she did neither of those things, as I will discuss. But first, let's look at what Judge Koh actually did and why she did it. The first thing Judge Koh did was she applied the correct legal rules. She applied Rule 23, this Court's precedents. She applied Comcast. If you look at pages 5 to 8 of her order, it's pretty clear that she identified the right rules and applied them. And in particular, she accurately describes the rules related to the sufficiency of class-wide damages models under Comcast. And plaintiff does not even argue that the Court applied the wrong rules. She didn't. Next, she reasonably and accurately read the record in this case and correctly found the critical issue was whether there was support in the record for the damages model proposed by plaintiff's CPA, Mr. Boyles. Excuse me, counsel. I guess maybe read the record a little differently than you. It seems to me that Wallen v. Jaguar involved a very similar damages model to what the plaintiffs are suggesting here. In what way did Judge Koh distinguish that model from the one that you are now describing? I don't think that Judge Koh went there or had to go there. I think what Judge Koh did, very simply, was to look for whether or not there was any evidentiary support for the assumptions made that underlie the model that was proposed by Mr. Boyles. And what she found in this case was that there was no substantial evidence to support the zero-value assumption that he applied to the car as delivered, and there was no evidentiary support for his adoption of the cost of repair as a proxy for the difference in value or the market value of the vehicle. And that's what she decided. She did not, as the plaintiffs have said, reject the idea that there could be a cost of repair remedy in an appropriate case and under the appropriate circumstances. She explicitly assumed that a cost of repair with the right evidentiary support and in the appropriate case could be a valid measure of market value. What she found here was a complete absence of proof by Boyles or the plaintiff in support of Boyles that the average cost of repair was a legitimate proxy and a valid model for assigning market value in the price-premium circumstance. Let's assume, arguendo, that there was, in fact, a design defect in the clutch. What should Judge Koh have decided was the appropriate measure of damage? Well, again, she assumed that you could base a damages remedy based on the cost of repair, but you have to do the work to establish that that's an appropriate thing. So what you need to do is you need to evaluate market value like economists do every day, and you need to look at the various different circumstances that go into the purchaser's decision and modify their expectations. The market value of what? I'm sorry, say again? The market value of what? Of the vehicle as delivered. The whole car? The vehicle as delivered with a clutch that is functional for sometimes tens of thousands of miles and has a slight risk of malfunction at some point during its useful life. But, counsel, that's all getting to post-sale actions. In other words, what's going to happen thereafter? The plaintiffs have indicated that, if I understand it correctly, that you have a car, all the cars in this particular design, that have a defectively designed clutch. You don't have to show what's going to happen later on. You just have that design. Now, whether they can prove that, I don't know. But if you take that arguendo, you don't have to get into what's going to happen in 10,000 miles or 20,000 miles, do you? You do. Why? The reason is this. And, again, it's a matter of focus. And, again, their argument is that you're focusing on post-sale experience, and you should, and you shouldn't do that under Pulaski. And my argument is that Judge Koh, first of all, specifically cited Pulaski, specifically said she was looking at the issue of value at the time of purchase, and then the language that she used specifically demonstrates that she was looking at the question of what the consumer, with the information, would have valued the car at at the time of purchase. So the characteristics that we know of in the record, for example, based on plaintiff's own experience, that these vehicles are often driven for thousands of miles, often repaired within the warranty period, and have a very slight risk of this malfunction. Would you drive a car for thousands of miles knowing that a part could go bad at any moment? It depends on the part, number one. It depends on the individual's expectations regarding what that safety component is. But most importantly, Your Honor, it's not a question of whether or not you would drive the car. The question for benefit of the bargain analysis is how would you value the car at the time of purchase? What kind of a discount would you demand for the possibility that this car is going to malfunction at some point down the road, I'm sorry, during its useful life? You're just saying you have a better way of making that evaluation. Exactly, and that's what Judge Koh was saying, was where's the evidence to support adopting total cost of repair rather than some measure for what an actual consumer, the reasonable actual consumer, would have valued the discount based on this defect at the time of purchase? Did you have evidence of that? There was no evidence whatsoever, and that's one of the things that Judge Koh remarked, you know, he can show that there's an average cost of repair is the appropriate measure if he can show that there's no value whatsoever to the part. But not only did he not prove it, he didn't even consider the question. And, in fact, his zero-value assumption that there's nothing that the consumer would apply in terms of value to the original car as delivered or the CSC as delivered, which Judge Koh discussed, that's actually contradicted by the record, which demonstrates as an illustration of why the Boyle's assumption was invalid, that there is obviously value to this clutch as delivered. The value is because they don't burn out for 25,000 miles instead of 50 or 100, whatever the? 25 or 40 or 50. So the value is whatever distance they get with that defective clutch, so the purchaser doesn't have the opportunity to decide what they think it should be, what it's worth. They just take this car, and it has some value because the clutch doesn't always burn out the first mile. Right. And that's the analysis is that there is some value that the purchaser would apply to that. But there's a negative value, too, to having your car break down and have to be towed and all the consequences that go along with having to mess around with a car that's been not only damaged like that but having to deal with finding a place to go if you have to spend the night somewhere or wherever you are. There's a huge negative value to that, too, isn't there? Understood and agreed, and Judge Koh assumed the same thing. What she found, however, was you still have to do the analysis, and you still have to put a number on it, and you can't just assume that everybody would apply zero value to the original clutch and would demand the full discount price. That may be true, but you have to prove it, and Broyles didn't prove it, and neither did the board. You have to prove it at this stage, though. I mean, I don't know about you, but I wouldn't buy a car that I knew had that problem. I wouldn't think of it. I've got kids, I've got grandkids. I wouldn't put them in a car like that. It's ridiculous. And I think a lot of other people would feel the same way. And it seems to me that there is an analysis exactly how it should play out. I don't know. But if you look at a car and you say this has got a defective clutch to design, I think there is a way to calculate what that might be. Whether it's $700, I don't know. But I don't know that at this stage of the proceeding, when you're just trying to decide whether you've got a class, commonality, and all those sorts of things, you have to decide all of that, do you? Well, I think you do because that's what Comcast demands, that there needs to be a rigorous analysis of whether or not you're overcompensating the class and whether or not that the damages model is valid and attaches to the liability facts. Well, let me ask you this. You're exactly right, Your Honor. Hang on. You say the plaintiffs would have to prove that the value to the consumers of that defective clutch and how much they'd diminish the value of the vehicle. What evidence would there be to do that? How would they prove that? Okay. I think what economists usually do is they rely on things like market surveys and consumer research to determine what kind of a value individual consumers would place on that, and they come up with a mean. So is that what plaintiffs were lacking? Yes. That they just didn't have the evidence, even though their theory may be perfectly acceptable, they just never presented any evidence that the average consumer would diminish the value of the vehicle by the cost of repair of that clutch. That's exactly right, and that's exactly what Judge Koh was talking about, was that you have to have some analysis. You have to have some consideration of it. Her criticism of Broyles and his analysis was that it was no analysis. He just said, well, this is what it costs to repair, and that's what people would use as the market value and left it there with just that assumption. I recently did a case involving attorney fees in class action involving the dirty diesel case, and Judge Breyer, there was a settlement, I think it was $10 point something billion, and Volkswagen had these dirty diesel cars. Some of the cars had been sold. Some of them had been sold, but they came up with a formula that basically said, hey, this car is not worth as much because you've got this defect, and they came up with something. Some of them had not been sold. So if they can do that in that case, why can't you do something in a case like this? It has to be proven, but isn't there a model that shows no sale, no post anything? I know there was some post things in the diesel case, but that shows that looking at that car, knowing there's a design defect, it is worth less than it otherwise would be, and it's worth less in some amount. I don't know what it is, but that's all pre-use of the car, right? Exactly, exactly, and for example, and I believe if you look at the report of the defense expert, Mr. Pross, you will see the kinds of factors that economists take into account in trying to come up with an answer for that question of what was the market value as delivered. So you're saying all plaintiffs really lacked was their own economists who say when a person goes to buy this vehicle, if they knew that it had a faulty clutch, they'd value the vehicle for the amount they'd pay by the amount of that clutch. That's exactly right. What they needed to do was they needed some evidentiary support for Mr. Boyle's assumption that the total cost of repair was an adequate proxy for the market value of the vehicle as delivered, and they didn't produce any of it, and that's what Judge Coe decided in this case based on that. Well, Mr. Boyle's assumption may have been based on something Mr. Boyle knew, right? He didn't do any analysis of the question of whether there was any value that the consumer could expect at the time of purchase if he knew that down the road it might be a malfunction. So the basis of the decision by the trial judge then was that I'm not going to throw out their theory, I'm just going to say they don't have any evidence to support that theory. Exactly right, Your Honor. So then what happens? Is the case over? The case should be over, exactly. But if I understand what you just said, you're saying that he had to do an evaluation of what people would feel about something happening later on. And I go back to the original theory, which is nothing's happened yet, nobody's bought anything, you just have a defectively designed or you've got a design of a defective clutch. Nothing else, nothing more. The question is, how do you value that? Exactly. And I gather you're saying that the expert didn't indicate anything about that or did perhaps the judge misunderstand that all you could look at was post-sale analyses and he didn't do that so she threw it out. No, I believe Judge Koh understood exactly what the model was and exactly what the flaw was. What needs to be done usually, I keep coming back to Mr. Prowse, but if you look at his report you'll see that the factors he talks about, things like this record demonstrates that the percentage of failures in this vehicle class were very, very low. But counsel, you're going back to the post-sale stuff again. That's not the issue, at least if I understand the thing correctly. You don't ever get into an analysis of how many of these things fail. All you have is a defective clutch. What does that mean in and of itself? Well, I believe under the CRA and the damages model, the benefit of the bargain model itself, what you would do is you would look from the time of purchase, impute the knowledge that was supposedly withheld. That knowledge would include there may be a risk of malfunction here, that malfunction may occur somewhere between 2% and 5% of the time. It may be thousands of miles before it happens. It may occur under warranty at which time it will be no expense to you. And based on factors like those and others that are cited in Mr. Prowse's report, what would be the value at the time of purchase to the consumer who's fully informed about what to expect from that vehicle? That is the market value that needs to be included. I thought that the district court was concerned because it had different value to different people. People were willing to take different risks with this. And so, therefore, there was no – the common issues didn't predominate. No, I don't think that was the basis for a decision, Your Honor. I think what she was saying was that the expert did not do the work. There's no proof in the record as to how any of the people who might be faced with this proposition would have valued the car under these circumstances. All right. Other questions about my colleague? All right. Thank you very much, counsel. We'll hear a rebuttal from the plaintiffs. Your Honors, Judge Coe's central error is she didn't look at our theory of liability and assumed that we were going to prevail in analyzing the damages model. As Judge Smith said, if it's true that we prove up the case that there's a common defect across all vehicles, they knew the defect and they should have disclosed it. Well, why don't you address what he just told us, is that he didn't really dispute your theory of damages. It's just you didn't have any evidence to support that theory. Well, I'm going to back my way into that. Okay. So at the point of sale, under the facts of this case, we have information that they should have disclosed that there was a design defect across all vehicles involving the clutch. We have information. Mr. Shackelford, extensive report on how to fix the cylinder problem, engineering report on making an aluminum cylinder rather than a composite cylinder. You purchase the cylinder, you use the labor cost, and you can replace it. That costs about $700. Now, at the point of sale, if a consumer receives this information saying there's a safety hazard in the clutch, it takes $700 to fix the clutch, or, you know, as Judge Smith said, either you wouldn't buy the car or you would say, I will take the $700, fix the clutch. If this fix is, you know, assures me that there's not going to be a problem with the clutch, then that's the difference. That's what he's saying was missing was evidence of how the consumer would react to the information that the clutch was defective when they went in to purchase a vehicle. That is the information. Because in our case, we have an actual fix. We have the information about the repair. And here, all we need is a reasonable, all we need, because it's a safety issue, all we need is a reasonable consumer standard. We don't need a survey involving. That's where we get the reasonable consumer standard. That is what in a situation like this? In a situation, as Judge Smith said, if you were a reasonable consumer and you received this information that we allege, saying that there was a defect, a safety problem that affects all vehicles, the reasonable response is, can it be fixed? Well, can the trial judge then make that assumption, that that's how a reasonable consumer would react to this? Yes. Is there some support for that, I guess is what I'm asking. Well, the standard under the Ninth Circuit is, is it traceable and is there a reasonable basis? It's not, do you have to spend $100,000, conduct a full-fledged survey to come up with something that is very obvious. Now, there are a number of decisions from district courts that have accepted exactly the calculations that we've alleged here. Judge Pregerson in Falco v. Nissan said, it's the cost necessary to make the vehicles conform to the value that plaintiffs thought they were receiving when they got the car. That's what we're saying. We're saying the $700 would have fixed the problem. So you're saying his argument that you didn't have any evidence to show that what the average consumer would do in this case is irrelevant. It's irrelevant. What the district court said about Falco was that the approach in Falco mitigates concerns that class members will receive a windfall because it sets damages equal to the amount necessary to make a defective part serviceable rather than the amount necessary to procure an entirely new part. I think the mistake is looking at post-sale events. So I think Falco is very well reasoned. I think in our case the cost of repair, she also makes a distinction between the cost of repair and replacement. Our argument, and it's supported by the expert report, is that the repair is replacing the problem. She seemed to think that somehow if you give them the amount to replace it that you're giving them a windfall. Yes. In fact, what we're saying is the only way to correct the defect is to use the replacement part. Thank you, Your Honor. Thank you. Thank you. Thanks to both counsel for your argument in this case. The case just argued is submitted.
judges: Schroeder, M. Smith, Rayes